**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROBERT GRIPPIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:19-CV-02588 |
| THE BLAIR MILLING & ELEVATOR ) | |
| COMPANY, INC., ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |

**COMPLAINT**

COMES NOW, Plaintiff Robert Grippin, by and through the undersigned counsel, and states and alleges as follows for his Complaint for Damages against Defendant The Blair Milling & Elevator Company, Inc. ("Defendant"):

**INTRODUCTION**

1. In violation of the Americans with Disabilities Act ("ADA") and The Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §12101 *et seq.*, Plaintiff, while an employee of Defendant, was subjected to unlawful discrimination based on his status as an individual with a disability/perceived disability and was retaliated against for his complaints and opposition to discrimination and harassment based on his disability/perceived disability.

2. Further, Plaintiff was retaliatorily discharged in violation of public policy due to his filing of a Kansas workers' compensation claim.

3. Plaintiff seeks compensatory and punitive damages against Defendant.

**PARTIES**

4. Plaintiff is and was at all times relevant to the allegations contained herein, a resident and citizen of Atchison, Atchison County, Kansas.

1

5. Defendant is and was at all times relevant herein, a Kansas corporation that conducted business in the state of Kansas at its location in Atchison, Kansas, which was its principal place of business, and is therefore a citizen of Kansas. Defendant is and was at all relevant times herein an employer within the meaning of the ADA/ADAAA.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as the matter involves a question of federal law under the ADA/ADAAA.

7. Upon information and belief, at relevant times, Defendant was person engaged in an industry affecting commerce who had 15 or more employees and is an "employer" as defined in 42 U.S.C. § 12111.

8. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Jurisdiction is proper over Defendant because it transacted business in the State of Kansas and the acts or omissions alleged herein occurred in the State of Kansas.

10. Venue is proper in this Court as the alleged acts, omissions, and occurrences giving rise to the claims asserted occurred in Atchison, Atchison County, Kansas.

## CONDITION PRECEDENT

11. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 9, 2019, which generated a charge number of 563-2019-00724. *A true and correct file-stamped copy of the charge, with date of birth redacted, is attached hereto as Exhibit A and incorporated herein by reference.*

12. Plaintiff thereafter received his Notice of Right to Sue issued by the EEOC dated July 5, 2019 permitting him to assert the federal claims alleged herein. *A true and*

*correct copy of the Notice is attached hereto as Exhibit B and incorporated herein by reference.*

13. This action is timely filed with the Court and Plaintiff has met all conditions precedent to the filing of this action.

## FACTUAL ALLEGATIONS

14. Plaintiff is and was at all times relevant herein an employee of Defendant. Plaintiff was employed by Defendant for four-plus years before his termination in or about July 2018 and, at the relevant times prior to his workplace injury, held the position of grain elevator operator.

15. On or about August 16, 2017, Plaintiff sustained injury to his right shoulder while in the course and scope of his employment with Defendant as a grain elevator operator.

16. Following this incident, Plaintiff's injury was reported to Defendant, and Defendant prepared an Employer's Report of Accident on or about August 17, 2017.

17. Following his injury, Plaintiff made a claim through the Kansas Division of Workers Compensation.

18. As a result of his injury, Plaintiff received medical treatment, including a right shoulder arthroscopy surgical procedure which was performed on or about November 16, 2017

19. Plaintiff took part in physical therapy following his injury.

20. On or about February 28, 2018, Plaintiff's treating physician released him back to work full duties, but placed him on a permanent, long-term restriction on him that he was not to engage in repetitive lifting of more than 50 pounds. He was otherwise released to perform activities as tolerated at work.

3

21. Plaintiff's condition of having a permanent, long-term restriction that he was not to engage in repetitive lifting of more than 50 pounds constitutes a disability and/or Defendant perceived or regarded Plaintiff's condition as a disability, as defined in the ADA/ADAAA.

22. Plaintiff's permanent, long-term restriction of not engaging in repetitive lifting of more than 50 pounds was a disability/perceived disability that he did not have prior to his sustaining his workplace injury on or about August 16, 2017.

23. Upon information and belief, Defendant knew or should have known of Plaintiff's above-described permanent, long-term restriction on or about, or soon after, February 28, 2018.

24. Following his release with permanent, long-term restriction, Plaintiff continued to attend physical therapy appointments per the recommendation of his treating physician, until approximately March/April 2018.

25. Following his return to work at Defendant's business after his workplace injury, supervisor Dustin Mercer made derogatory remarks to Plaintiff regarding his disability/perceived disability including comments such as, with respect to Plaintiff's need to attend physical therapy appointments, that Plaintiff was "milking it."

26. Following Plaintiff's return to work after his release from care from his workplace injury, he was placed in a position as a feed packer/packing floor employee/sewing machine operator; he also performed sweeping.

27. Following his return to work after his workplace injury, Plaintiff was able to perform the essential functions of his job duties as feed packer/packing floor employee/sewing machine operator such as sweeping, sewing, etc. with or without reasonable accommodation.

4

28. Plaintiff's disability/perceived disability did not prevent Plaintiff from performing the duties and responsibilities of these positions.

29. Despite having knowledge of his permanent, long-term restriction, Plaintiff's supervisor Mr. Mercer would tell Plaintiff that Plaintiff needed to repetitively move bags that were 50 pounds or more.

30. Plaintiff advised Mr. Mercer that Plaintiff was unable to do such work due to his permanent, long-term restrictions, but Mr. Mercer criticized Plaintiff on one or more occasions where he, for example, called Plaintiff a "girl" or a "little bitch."

31. Further, due to Mr. Mercer's criticisms of Plaintiff following Plaintiff's return to work, other employees would give Plaintiff a hard time as well, which included being told Plaintiff was using his shoulder as an "excuse."

32. Following Plaintiff's return to work after his workplace injury, he complained to ownership of Defendant about how Plaintiff was being bullied by Mr. Mercer because Plaintiff was not able to do certain activities because of his above-described permanent, long-term restriction.

33. Plaintiff's claim with the Kansas Division of Workers' Compensation was resolved in or about April/May 2018.

34. Plaintiff was written up by his employer twice after his return to work, in or about June and July 2018, as further discrimination/retaliation based on Plaintiff's disability/perceived disability.

35. The write-ups Plaintiff received after his return to work following his August 2017 workplace injury were merely pretextual.

36. Plaintiff was subsequently terminated from his position with Defendant The Blair Milling & Elevator Company, Inc. in or about the week of July 9, 2018 as

5

discrimination/retaliation due to Plaintiff's disability/perceived disability and his filing of a workers' compensation claim.

37. As a result of Defendant's discriminatory conduct, acts and omissions, Plaintiff has incurred lost wages, loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

38. The conduct set forth herein constitutes violations of the ADA/ADAAA.

39. At all times mentioned herein, the above referenced perpetrators, including Dustin Mercer and other employees, were agents, employees and servants of Defendant and were at all such times acting in within the course and scope of their employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable under the doctrine of *respondeat superior*.

## COUNT I
## ADA – DISABILITY/PERCEIVED DISABILITY DISCRIMINATION

40. Plaintiff incorporates herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

41. The ADA/ADAAA prohibits discrimination against a person who has or is regarded as having a physical impairment that substantially limits one of more of his or her major life activities.

42. The conduct and actions by the above-described perpetrators were performed on the basis of Plaintiff's disability/perceived disability and constitute discrimination based on disability.

43. By failing and refusing to engage in the interactive process; and/or refusing to accommodate Plaintiff with respect to his disability; and/or refusing to allow Plaintiff

to continue to work when he was fully released for duty, Defendant engaged in conduct that is prohibited by the ADA/ADAAA. 42 U.S.C.§ 12101, *et seq.*

44. Plaintiff suffered tangible adverse employment actions as a result of Defendant conduct as referenced herein.

45. Defendant's conduct caused Plaintiff mental anguish and emotional distress, including embarrassment, stress, anxiety and depression.

46. The conduct of Defendant described herein would have detrimentally affected a reasonable person in Plaintiff's position.

47. Defendant's treatment of Plaintiff was discriminatory in nature and was based upon Plaintiff's status as a person who has or is regarded as having a physical impairment that substantially limits one or more major life activities.

48. Supervisory and administrative-level employees of Defendant knew or should have known of the discrimination but that failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop the discrimination.

49. As a result of Defendant's discriminatory conduct, acts and omissions, Plaintiff has incurred lost wages, loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

50. The actions and conduct set forth herein were outrageous and showed evil motive, reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from similar conduct.

51. At all times mentioned herein, the above-referenced perpetrators, including Dustin Mercer and other employees, were employees, agents and servants of Defendant

and were at all such times acting within the course and scope of their employment with Defendant and/or their actions were expressly authorized by Defendant making Defendant liable under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count I of his Complaint, for a finding he has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §12101 *et seq.*, for an award of compensatory and punitive damages, pre-judgment and post-judgment interest as provided by law, for his costs expended, reasonable attorneys' fees, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT II
## ADA/ADAAA – RETALIATION

52. Plaintiff incorporates herein by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

53. Plaintiff complained to Defendant of the disability/perceived disability discrimination under ADA/ADAAA to which Defendant subjected Plaintiff, as set forth herein.

54. Plaintiff's complaints of disability/perceived disability discrimination and opposition to Defendant's hostile work environment, constituted legally protected activities under 42 U.S.C. § 12101 *et seq.*

55. By reason of Plaintiff's complaints and opposition to discrimination and harassment, Defendant retaliated against Plaintiff, in ways including, but not limited to:

   a. Subjecting Plaintiff to harassing comments, as described herein;
   b. Issuing Plaintiff unwarranted, pretextual write-ups following his return to work after his workplace injury;

8

    c. Demanding Plaintiff to engage in activities that required repetitive lifting of more than 50 pounds, despite Plaintiff's ability and willingness to perform his assigned job duties such as sweeping, sewing, etc. with or without reasonable accommodation.

    d. Generally subjecting Plaintiff to unwarranted criticism and a harassing and offensive work environment, in retaliation for his participation in protected activities and his opposition to disability/perceived disability discrimination.

56. At all times mentioned herein, before and after, the above-referenced individuals were agents, servants, and employees of Defendant and were at all times acting within the course and scope of their employment.

57. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

58. At the time Defendant engaged in retaliatory acts directed at Plaintiff, Defendant knew that such retaliation was unlawful.

59. The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

60. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages, including lost wages, loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful retaliation prohibited by 42 U.S.C. §12101 *et seq.;* for an award of compensatory and punitive damages; equitable relief; for his costs expended; for his reasonable attorneys' fees as provided by 42 U.S.C. §12101 *et seq.* and for such other relief as this Court deems just and proper.

## COUNT III
## RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY

61. Plaintiff incorporates herein by reference the above allegations and paragraphs as though fully set forth herein.

62. Plaintiff availed himself of Kansas workers' compensation benefits in the form of medical treatment.

63. Defendant had knowledge of Plaintiff's workers compensation claim injury on or soon after August 16, 2017.

64. Plaintiff was terminated approximately four months after being cleared to return to work with a permanent, long-term restriction after receiving medical treatment for his workplace injury.

65. Upon information and belief, Plaintiff was retaliatorily discharged because he exercised rights and requested the benefits to which he was entitled under the Kansas Workers' Compensation Laws.

66. Defendant violated Kansas law and public policy by discharging Plaintiff from his employment because Plaintiff exercised his rights under the Kansas Workers' Compensation statute as set forth in KSA §44-501 et seq.

67. As a direct and proximate cause of the alleged wrongful discharge, Plaintiff has incurred and will continue to incur lost income that he would have otherwise earned and he is entitled to compensatory damages.

68. As a direct and proximate cause of the alleged wrongful discharge Plaintiff has experienced and will continue to experience lost wages, loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation.

69. The actions and conduct set forth herein were outrageous, showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and were willful, wanton, and malicious, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and deter Defendant and others from similar conduct.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant in the form of compensatory damages, including lost wages, loss of enjoyment of life, mental anguish, and emotional distress, including stress, anxiety, humiliation and degradation, punitive damages, and for his costs expended and for such further and equitable relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all issues pursuant to FRCP Rule 38.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas, as the place of trial.

Respectfully submitted,

HOLMAN SCHIAVONE, LLC


By: */s/ Brandon L. Corl*_____
Anne Schiavone, Kansas Bar #19669
Brandon Corl, Kansas Bar #23043
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
aschiavone@hslawllc.com
bcorl@hslawllc.com

ATTORNEYS FOR PLAINTIFF

12